# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BILLY RAY DIXSON,

    Petitioner,    :    Case No. 1:08-cv-540

 - vs -              Chief Judge Susan J. Dlott
                   Magistrate Judge Michael R. Merz

WANZA JACKSON,
 Warden, Warren Correctional Institution,

    Respondent.    :

## REPORT AND RECOMMENDATIONS

Petitioner Billy Ray Dixson brought this case under 28 U.S.C. § 2254 to seek relief from his conviction and year sentence for felonious assault with a firearm specification. He pleads the following grounds for relief:

> **GROUND ONE:** Petitioner was denied his right under the Sixth Amendment to the effective assistance of counsel where appellate counsel failed to raise that trial counsel was ineffective in failing to objects to the State's attorney testifying as an expert on physics before the jury during closing arguments.
>
> **GROUND TWO:** Petitioner was denied his right under the Sixth Amendment to the effective assistance of counsel where appellate counsel failed to raise that the Prosecuting Attorney committed misconduct amounting to plain error when the prosecutor testified as an expert witness before the jury during closing arguments.
>
> **GROUND THREE:** Petitioner was denied the Due Process of Law under the Fourteenth Amendment where the trial court erred by failing to instruct the jury on the lesser included offense of aggravated assault.
>
> **GROUND FOUR:** The Petitioner was denied Due Process of Law under the Fourteenth Amendment where the convictions were based

upon insufficient evidence.

**GROUND FIVE:** Petitioner was denied the Due Process of Law under the Fifth, Sixth, and Fourteenth Amendments where statute prohibiting multiple convictions for allied offenses of similar import did not preclude convictions for four counts of felonious assault; and trial court erred in imposing consecutive sentences where the Double Jeopardy Clause of the United States and Ohio Constitutions forbid multiple punishment for the same offense.

On the Court's Order for answer, the Warden has filed a response to the Petition (Doc. No. 10). Despite the Court's having set a date for a reply, Petitioner has not filed one and the time set for doing so has expired (Doc. No. 12). The case is thus ripe for decision on the merits.

## Grounds One and Two: Ineffective Assistance of Appellate Counsel

In his first two Grounds for Relief, Petitioner claims he received ineffective assistance of appellate counsel in two respects, failure to raise as error (1) a closing argument comment by the prosecutor about the laws of physics (2) ineffective assistance of trial counsel for not objecting to the comment. The Warden asserts these two claims are procedurally defaulted because they were never presented to the Hamilton County Court of Appeals.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

. . . .

>> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

Persons charged with criminal offenses are of course entitled to the effective assistance of counsel under the Sixth Amendment and that right extends to assistance on an appeal of right. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

Ohio provides as the remedy for ineffective assistance of appellate counsel a provision to reopen a direct appeal under Ohio R. App. P. 26(B). Petitioner here filed such an application but never raised these two claims.

If Petitioner attempted to file a second Rule 26(B) Application to raise these claims, it would undoubtedly be rejected by the Ohio Court of Appeals, since there is no provision in Ohio law to file a second such application. "[T]here is no right to file successive applications for reopening" under App. R. 26(B). *State v. Twyford,* 106 Ohio St. 3d 176 (2005), quoting *State v. Williams,* 89 Ohio St. 3d 179, 790 N.E. 2d 299, ¶ 12. That rule against second or subsequent applications is plainly independent of federal law and adequate in the sense that it protects an important state

interest in finality, the same interest protected by the prohibition on second and subsequent habeas corpus petitions under 28 U.S.C. § 2254.

Petitioner admits that he procedurally defaulted these claims, but asserts he can show cause and prejudice to excuse the defaults. (Memorandum in Support of Petition at 9). However, the only cause he suggests is ineffective assistance of appellate counsel. Before ineffective assistance of appellate counsel can be used to excuse a procedural default, the ineffective assistance of appellate counsel claim must itself be properly presented to the state courts. *Edwards v. Carpenter,* 529 U.S. 446 (2000). Instead of properly presenting these two claims of ineffective assistance of appellate counsel to the Ohio courts, Petitioner omitted them from his Ohio App. R. 26(B) Application. He cannot present ineffective assistance of counsel as excusing cause when he has not given the state courts an opportunity to decide that issue.

Since he did not present these two claims in the state courts, they are procedurally defaulted and should be dismissed with prejudice.

### Ground Three: Failure to Instruct on Lesser Offense

In his third Ground for Relief, Petitioner objects to the trial court's failure to instruct the jury on the lesser included offense of aggravated assault. The Warden asserts this claim is also procedurally defaulted because no objection was made at trial, a deficiency the Court of Appeals held against Petitioner in deciding the case.

It is correct that there was no contemporaneous objection and that this default was held against the Petitioner by the Court of Appeals. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time

when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1969), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998) — is an adequate and independent state ground. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Cott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Because Petitioner procedurally defaulted in presenting this claim to the state courts by failing to make a contemporaneous objection, Ground Three should be dismissed with prejudice.

**Ground Four: Insufficient Evidence**

In his fourth Ground for Relief, Petitioner asserts that his conviction violates the Due Process Clause of the Fourteenth Amendment because insufficient evidence was presented at trial.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to

ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).

The facts upon which the convictions rest were set out by the Court of Appeals as follows:

> The state presented evidence at trial that, on June 8, 2002, Brandon Price, Belinda Hughes, Price's sister, and her nine-month-old daughter were in a car stopped at the intersection of State Route 4 and Kemper Road. Price noticed that, in the Honda stopped behind them, a male driver and his female passenger were arguing. Dixson was the driver, and Jodie Andrews was his passenger. As Price turned onto Kemper Road, he noticed that Dixson passed them and moved into a left-turn lane. When Price was about to pass the Honda on the right side as he proceeded down Kemper Road, the Honda suddenly swerved in front of Price's car, nearly striking the front of it. At that time, Price's sister yelled to Dixson that she had a child in the car, and that Dixson should watch how he was driving.
>
> Dixson proceeded to drive quickly down Kemper Road. Price soon passed Dixson's car in the right lane of traffic, because the traffic in Dixson's lane had stopped. Hughes saw that Dixson had begun making hand gestures, and that he had reached under his seat. As Dixson did so, his female passenger began to hit him. Price then began to make a left turn onto Chesterdale Road in order to get away from Dixson.
>
> Price testified that he and his passengers were afraid of Dixson's "road rage." As Price turned, Dixson passed him, swerved his car in front of Price's car, and cut in front of him a second time.
>
> Dixson then began to "brake-check" Price by repeatedly slamming on his brakes, so Price slowed down. Dixson then pulled out a gun, stuck the gun out his window, and started to fire it at Price's car. After Dixson fired about three rounds, he kept driving, so Price thought the ordeal was over. Then Dixson slowed down and turned into a gravel drive, and he began firing at Price's car again.
>
> Dixson continued to fire his gun as he slowed and turned around in the drive. To avoid being struck by the bullets, Price ducked behind the dashboard and tried to maneuver his car past the passenger's side of the Honda, because Dixson was firing from the driver's side of his car.

Price drove to a friend's home nearby to report the shooting and to call for emergency assistance. No one in his car had been struck by the bullets. Price saw bullet holes in the center of the driver's door, above the fender on the driver's side, in a light plate, and near the fog lights. Price also discovered a bullet hole in the oil pan. The police arrived within five minutes, and Price and his passengers gave descriptions of Dixson, Andrews, and the Honda.

Sharonville Police Detective Christopher Wilson testified that officers located the Honda parked outside an apartment building in a complex off Chesterdale Road. Detective Wilson saw that the car's passenger window was broken. He testified that the damage in and around the area was consistent with gunfire. He also saw a live round embedded near the base of the passenger's seat.

Detective Wilson testified that the police received a call that indicated that the shooting suspects had run into one of the apartment buildings in the complex. The police set up a perimeter around the area. After determining that the suspects were likely in one of the apartments, the police evacuated the rest of the building and called in the Hamilton County SWAT Team. Meanwhile, the police learned that the Honda had just been reported stolen.

Detective Wilson recovered a spent nine-millimeter casing at the driveway entrance to the apartment complex. He recovered a round fragment stuck in the metal frame of the rear passenger window of the Honda. He also saw a bullet entry point on the base of the passenger window.

About three hours later, Dixson and his female passenger walked out of the apartment and were immediately arrested. The woman gave police consent to search the apartment. Police recovered from the apartment keys to the Honda and a nine millimeter gun that had been covered with a sheet and hidden between the toilet and the sink in the apartment's bathroom.

Detective Wilson testified that, in addition to the five rounds that had struck Price's car, the two rounds that had struck the Honda, and the live round he had recovered from the Honda, he found seven rounds in the recovered gun. One of the rounds was in the gun's chamber, and six rounds were in its magazine. Detective Wilson testified that the gun and its magazine had a fifteen-round capacity. He test-fired the gun and determined that it was operational. Detective Wilson testified that, upon a further search of the Honda, he recovered a spent shell casing from its center console area and a wallet containing Dixson's Indiana identification card.

> For the defense, Andrews testified that she was the passenger in the Honda and that she and Dixson had been arguing before he drove in front of Price's car. She said that, at some point, she told Dixson that she thought one of the people in the front seat of Price's car had a gun. Following the shooting incident, Dixson drove to her apartment. She testified that Dixson had threatened to kill himself, and that he had held the gun to his head, so she did not want to leave him there.
>
> Dixson testified that he had been arguing with Andrews when he cut in front of Price's car. He said that he had had no idea what he had done "until they pulled up alongside of me and the girl was hanging out the window, you know, screaming and hollering. The driver was screaming and hollering. He flipped me the bird." Dixson admitted that he made the same gesture back to them. Dixson said that Price followed them and that, at one point, he took a gun from under his seat and put it in his lap. Then he looked in his side rear-view mirror and saw Price with a "pistol sticking out like he was about to shoot at me first." So, at that point, Dixson stuck his gun out and fired shots at Price's car. In doing so, Dixson shot out his own window. He testified that he then fired a few more rounds at Price "because I thought he was going to kill me or do something to us." Dixson claimed that he had been acting in self-defense. But, on cross-examination, Dixson admitted that nothing had prevented him from fleeing from the incident, except for the fact that Andrews had been scared and had wanted to get home.
>
> Dixson testified that he then drove to Andrews's apartment, where he considered suicide. He called the owner of the Honda, Tamara Federle, and told her to report the car stolen so that she would not get into trouble.

(Return of Writ, Exhibit 9; *State v. Dixson*, First Dist. No. C-030227, 2004-Ohio-2575, ¶3-18).

In contrast to the other four grounds for relief in the Petition, Mr. Dixson squarely presented this claim on direct appeal. In denying the claim, the Ohio Court of Appeals applied the correct constitutional standard, as set forth in *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991); and *State v. Thompkins,* 78 Ohio St. 3d 380, 678 N.E. 2d 541 (1997).

After April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, when a federal habeas court reviews a state court conclusion on a question of federal constitutional law:

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005). Upon the facts as found by the Court of Appeals, set forth above, it is plain that there were sufficient facts in evidence which, if believed (as clearly the jury did) were sufficient to prove every element of the offense of felonious assault on four different victims.

Therefore, the fourth Ground for Relief is without merit and should be dismissed with prejudice.

### Ground Five: Multiple Convictions

In Ground Five Petitioner asserts the Double Jeopardy Clause of the United States Constitution[1] prohibits multiple convictions and consecutive sentences in this case.

---

[1] Petitioner also mentions the Ohio Constitution, but claims that a conviction violates the Ohio Constitution are not cognizable in a federal habeas corpus action.

The Warden objects that this claim is also procedurally defaulted because it was not properly presented to the Ohio courts. As shown by the Warden's citation to Petitioner's brief on appeal, this claim was argued solely in terms of Ohio Revised Code § 2941.25, Ohio's provision relating to allied offenses of similar import, and was decided by the Court of Appeals solely as an issue of statutory interpretation.

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it). The claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation. *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538, (6th Cir. 2004), citing *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

Petitioner did eventually present a Double Jeopardy claim to the Ohio courts when he appealed to the Ohio Supreme Court. However, the Ohio Supreme Court will not consider constitutional arguments presented first to them which have not been presented to the courts below. *State v. Jester*, 32 Ohio St. 3d 147 (1987).

Petitioner's fifth Ground for Relief should also be dismissed with prejudice as procedurally defaulted.

## Conclusion

Based on the foregong analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

November 30, 2009.

s/ **Michael R. Merz**<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).